# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

**JUL 0 9 2019**

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **CRIMINAL NO. H-18-316-S** |
| | § | |
| **WINFRED FIELDS** | § | |

### SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
(Title 18, U.S.C. § 1349)

At all times material to this Indictment:

#### I.  The Participants in the Scheme

1. WINFRED FIELDS operated a federal income tax preparation business in Houston, Texas.  FIELDS utilized several business names in his tax preparation business, including Fields Enterprises and Your Tax Professionals, Inc., doing business as The Tax Boss.  FIELDS operated his tax preparation business from an office located on Richmond Avenue in Houston, Texas.

2.  Unnamed individual #1 (U.I. #1) held himself out as an accountant and tax preparer. FIELDS and U.I. #1 were business partners.  U.I. #1 was the Treasurer of Your Tax Professionals, Inc., and was a signor on bank accounts held in the name

of Your Tax Professionals, Inc.    U.I. #1 aided and assisted FIELDS in the preparation and filing of federal income tax returns.

## II. Background

3.  The Convention Between the Governments of the United States and the United Kingdom of Great Britain and Northern Ireland

The United States of America ("U.S.") and the United Kingdom ("UK") of Great Britain and Northern Ireland entered into a Convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and on capital gains.   This Convention or treaty agreement was signed by a designated representative of each government on July 24, 2001.  The Convention is comprised of 30 Articles.  Article 21 addresses taxation under the circumstances of "Offshore Exploration and Exploitation Activities."

The Convention established the taxation rules for residents of one country performing work and receiving pay in the other country to avoid double taxation and the prevention of fiscal tax evasion. Article 2 of the Convention states that the Convention applies, in the case of the United States, to U.S. federal income taxes imposed by the Internal Revenue Code (excluding social security taxes).

A.  Article 21

The provisions of Article 21 specifically apply to activities involving exploration or exploitation of the seabed and sub-soil and their natural resources which are carried out offshore of either the U.S. or the UK for a period exceeding in

2

the aggregate 30 days within any period of twelve months. Article 21 therefore applies to UK residents working offshore in oil and gas exploration and exploitation in the U.S. for a period in excess of 30 days, whether or not consecutive, during any twelve-month period.  Salary, wages, and other similar remuneration derived by the UK resident from his or her employment (in excess of 30 days during any twelve-month period) in respect of exploration or exploitation activities carried on offshore in the U.S. may be taxed by the U.S.

The U.S. is defined to mean the United States of America, including the states, the District of Colombia, the territorial seas of the U.S., and the seabed and sub-soil of the submarine areas adjacent to the territorial sea over which the U.S. exercises sovereign rights in accordance with international law.

The United States has exclusive rights, in accordance with international law, with respect to the exploration for and exploitation of natural resources of the seabed and subsoil of those submarine areas which are adjacent to the territorial waters of the United States. The seabed and sub-soil of the submarine areas known as the Outer Continental Shelf which appertains to the U.S., some 200 nautical miles from shore and beyond in certain specified areas, is subject to the jurisdiction, control, and power of disposition of the U.S. by Congressional Act, Title 43, United States Code, Section 1333(a)(1). The jurisdiction, control and power of disposition by the U.S. extends to all artificial islands, and all installations and other devices permanently

or temporarily attached to the seabed erected thereon for the purpose of exploring for, developing, or producing resources therefrom.

> B.   Article 14

Article 14 of the Convention addresses the circumstances when income from employment would be taxed in the U.S., rather than in the UK, for other than oil and gas exploration and exploitation within the U.S.  If any one of the following occurs, the wages or income earned by a non-resident could be taxed by the U.S.:

> a. the non-resident worker is in the U.S. in aggregate over 183 days in any twelve-month period commencing or ending in the taxable year concerned;
> b. the non-resident worker's income is paid by, or on behalf of, an employer who is a resident of the U.S.; or
> c. the non-resident worker's income is borne by a permanent establishment which the employer has in the U.S.

4.     On February 22, 1990, the United States entered into a Tax Convention with Spain. Article 16 of that Convention sets out that a Spanish resident worker can be taxed in the United States if any of the following applies:

> a. the non-resident worker is in the U.S. in aggregate over 183 days in any twelve-month period;
> b. the non-resident worker's income is paid by, or on behalf of, an employer who is a resident of the U.S.; or
> c. the non-resident worker's income is borne by a permanent establishment or a fixed base which the employer has in the U.S.

The Convention with Spain exempts from U.S. taxation, Spanish residents whose employment is as a member of the regular complement of a ship or aircraft operated in international traffic by a Spanish business. However, if the resident of Spain is an

employee of a regular complement of a ship or aircraft operated in international traffic by a U.S. business then the non-resident's income is not exempt from U.S. taxation.

5.     The United States does not have a Tax Convention with the countries of Singapore, Brazil or Croatia.

### lll. U.S. Offshore Oil and Gas Exploration and Exploitation

6.     Subsea 7 (US) LLC was based in Houston, Texas and provided Engineering and Construction Services.  During 2007 through 2012 Subsea 7 (US) LLC conducted activities in offshore oil and gas exploration and exploitation including within the U.S.' outer continental shelf.  Subsea 7 (US) LLC operated vessels in the Gulf of Mexico as part of their operations.  The vessels used for these activities were either owned or leased by Subsea 7.  The vessels Subsea 7 operated in the Gulf of Mexico were manned by non-U.S. citizens. Subsea 7 used a related "manning company" outside the U.S. to hire the workers for these vessels. The wages paid to the crew were borne by Subsea 7 (US) LLC, who issued W-2 Wage and Tax Statements and paid the federal tax withholdings from the wages of the crew members working in the U.S., to the IRS.  The workdays for the non-resident workers were tracked and provided to a CPA firm in Houston, Texas for the preparation of U.S. income tax returns for the non-resident workers.

7.     Technip was an international company with subsidiaries operating around the world which provided services onshore/offshore, subsea and surface technologies related to oil and gas exploration and exploitation. Technip USA, Inc., based in Houston, Texas, managed projects in the Gulf of Mexico. These projects utilized a vessel ("Deep Blue") within the outer continental shelf of the U.S. The crew for the Deep Blue were provided by Technip Offshore Manning Services Ltd in Scotland. The cost of the vessel and the crew was borne by Technip USA, Inc. To meet U.S. federal tax requirements, an international CPA firm was engaged to prepare and submit U.S. Individual Nonresident Tax Returns, Forms 1040NR for the non-resident crew members on the vessel engaged in oil and gas exploration or exploitation in the U.S.

8.     UTEC was an independent provider of offshore services. UTEC's office in Houston, worked with Technip to provide a few workers to assist Technip with navigation and pipeline location for the vessel Deep Blue. While working on the Deep Blue in the U.S., UTEC reported the income of the non-resident workers to the IRS and submitted tax withholdings to the IRS as well.

## IV. THE CONSPIRACY

9.     From in or about April 2010 and continuing through on or about November 4, 2016, in the Southern District of Texas and elsewhere, the defendant

WINFRED FIELDS

and others known and unknown to the grand jury, did knowingly conspire and agree with one another to commit the following offenses against the United States:

a. To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, and knowingly used and cause to be used the United States mails, and private and commercial interstate carriers for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341.

b. To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, and to knowingly use and cause to be used interstate wire communications facilities in carrying out the scheme to defraud, in violation of Title 18, United States Code, Section 1343.

## V.    MANNER AND MEANS OF THE SCHEME

It was part of the scheme that:

10.    WINFRED FIELDS recruited as tax clients, non-resident taxpayers who worked aboard vessels leased by United States companies to perform work related to the oil and gas industry within the Outer Continental Shelf of the United States.

11.    WINFRED FIELDS paid and promised to pay a referral fee to a

crewmember, A.D., for bringing other crewmembers as clients to FIELDS.

12.    WINFRED FIELDS communicated with non-resident taxpayers through United States mail or a private interstate commercial carrier, email, and telephone conversations.

13.    WINFRED FIELDS falsely informed the non-resident taxpayers that their employers incorrectly withheld money from their wages to pay as taxes to the IRS.

14.    WINFRED FIELDS offered, for a fee, to file on behalf of the non-resident taxpayers, amended tax returns to amend the tax returns previously prepared by CPA firms in order to obtain a refund of the funds withheld from their wages and paid to the IRS.

15.    WINFRED FIELDS offered, for a fee, to file on behalf of the non-resident taxpayer, original U.S. Nonresident Alien Income Tax Returns, IRS tax forms 1040NR, in order to obtain a refund of the funds withheld from their wages and paid to the IRS for the tax years in which it was believed a tax return had not yet been submitted by another preparer.

16.    WINFRED FIELDS caused the non-resident taxpayers to sign a contract with him which set out a fee arrangement for his services regarding the tax returns.

17.    WINFRED FIELDS caused the non-resident taxpayers to sign several

documents which provided FIELDS with access to the taxpayer's information at the IRS and to act on their behalf in filing tax returns and receiving and negotiating refund checks.

18.     WINFRED FIELDS and a co-conspirator prepared, filed, and caused to be prepared and filed, amended U.S. Individual Tax Returns, Forms 1040X, in the names of non-resident taxpayers falsely claiming the earnings withheld and paid to the Internal Revenue Service by their employers was exempt from taxation in the United States pursuant to the treaty with the UK and should be refunded.

19.     WINFRED FIELDS and a co-conspirator prepared, filed, and caused to be prepared and filed, U.S. Nonresident Alien Income Tax Returns, Forms 1040NR, in the names of non-resident taxpayers falsely claiming the earnings withheld and paid to the Internal Revenue Service (IRS) by their employer was exempt from taxation in the United States pursuant to the treaty with the UK and should be refunded.

20.     WINFRED FIELDS and a co-conspirator falsely claimed refunds from the earnings withheld and paid to the IRS in the names of non-resident taxpayers who were neither citizens nor residents of the UK claiming their income was exempt from taxation in the United States pursuant to the tax treaty between the United States and the UK and should be refunded.

21.     WINFRED FIELDS caused the IRS to mail to his business address in

Houston, Texas the refund checks payable to the non-resident taxpayer, or to provide the refunds electronically through a bank deposit.

22. WINFRED FIELDS would negotiate or cause to be negotiated the U.S. Treasury tax refund checks payable to the non-resident taxpayer by either depositing the checks into a bank account he controlled, or causing tax refund checks to be deposited into a lawyer's trust account at the lawyer's bank, or by causing tax refund checks to be cashed at a check cashing business.

23. WINFRED FIELDS used proceeds from the refund checks to pay a fee to the cash checking business for cashing the refund checks, as well as to the lawyers who deposited the tax refund checks into their trust accounts.

24. WINFRED FIELDS caused the check cashing business to provide him either a money order or cash, minus the check cashing fee, which represented the proceeds of the tax refund checks negotiated.

25. WINFRED FIELDS caused the lawyers who deposited the tax refund checks into their trust accounts to write checks payable to FIELDS representing the proceeds of the negotiated refund checks, minus the fee charged by the lawyer for that service.

26. WINFRED FIELDS deposited and caused to be deposited the proceeds from the negotiated refund checks, into a bank account over which he or U.I. #1, or both had control.

27.   WINFRED FIELDS sent emails to non-resident taxpayers misleading and deceiving them regarding the status of refunds from the IRS.

28.   WINFRED FIELDS and a co-conspirator would stall and delay paying some, or in some instances any, of the tax refund proceeds to the non-resident taxpayers.

29.   WINFRED FIELDS and a co-conspirator on occasion provided a portion of the tax refund to the non-resident taxpayer through PayPal, through an interstate commercial mail carrier such as DHL, and through international or interstate wire transfers.

30.   WINFRED FIELDS often kept more of the proceeds from the tax refund checks than he was authorized by the non-resident taxpayer to receive in tax preparation fees.

31.   WINFRED FIELDS shared a portion of the proceeds from the scheme to defraud with his co-conspirator.

32.   WINFRED FIELDS and a co-conspirator caused the preparation and submission of approximately 200 tax returns or amended tax returns in the names of non-resident taxpayers falsely claiming tax refunds from the IRS.

33.   WINFRED FIELDS and a co-conspirator fraudulently-obtained $3,097,974.19 in tax refunds from the IRS after falsely claiming the non-resident taxpayers were exempt from taxation under a tax treaty.

34. WINFRED FIELDS and a co-conspirator kept approximately $1,302,271.75 in fraudulently-obtained tax refund proceeds after paying approximately $1,728,012.04 to the non-resident taxpayers.

## VI.    ACTS IN FURTHERANCE OF THE CONSPIRACY

35.    In furtherance of the conspiracy described in Count One and to effect the objects thereof, the defendant named therein and other persons both known and unknown to the grand jury, performed or caused the performance of one or more of the following acts, among others not described herein, in the Southern District of Texas and elsewhere on or about the following dates:

(1)    June 10, 2010, WINFRED FIELDS sent and caused to be sent an email to individuals working on vessels claiming their income should not have been taxed and that the CPA advising them and their employer that their income was taxable in the U.S. did not know what he was doing or may have had another motive in advising that U.S. taxes were owed.

(2)    June 14, 2010, WINFRED FIELDS responded to an email sent by M.H. advising FIELDS that certain information FIELDS provided to the IRS in a taped telephone call was not accurate.

(3)    December 7, 2010, WINFRED FIELDS emailed U.I. #1 asking U.I. #1 whether a tax return had been filed in the name of D.D., a citizen and national of Croatia.

(4)    December 7, 2010, U.I. #1 responded to an email from WINFRED FIELDS that a return had not been done in the name of D.D. since there was not a U.S. treaty with Croatia.

(5)    December 7, 2010, WINFRED FIELDS instructed U.I. #1 to file a return in the name of D.D. "just as the Brazilians."

(6)    February 24, 2011, WINFRED FIELDS filed with the IRS a 2009 U.S. Nonresident Alien Income Tax Return in the name of I.C., a citizen of Brazil, which falsely claimed R.D.R. was exempt from U.S. income tax under Article 14 of the UK Treaty.

(7)    February 24, 2011, WINFRED FIELDS filed with the IRS a 2009 U.S. Nonresident Alien Income Tax Return in the name of R.D.R., a citizen of Brazil, which falsely claimed R.D.R. was exempt from U.S. income tax under Article 14 of the UK Treaty.

(8)    February 24, 2011, WINFRED FIELDS caused to be filed with the IRS a 2009 U.S. Nonresident Alien Income Tax Return in the name of M.R.R., a citizen of Brazil, which falsely claimed M.R.R. was exempt from U.S. income tax under Article 14 of the UK Treaty.

(9)    March 15, 2011, U.I. #1 sent and caused to be sent an email to T.H. concerning U.S. tax refund claims for D.D. stating "we had to do additional research because he is not a UK resident and the US does not have a tax treaty with Croatia.

13

We have finally come up with the response that we believe gives us the best chance for success and we will be submitting it before the month is over."

(10)   May 4, 2011, WINFRED FIELDS sent an email to U.I. #1 asking for a list of "everyone that we need to send money to please."

(11)   May 5, 2011, U.I. #1 sent an email in reply to WINFRED FIELDS request stating, "[w]e don't have enough to pay all of them."

(12)   June 2, 2011, U.I. #1 sent an email to WINFRED FIELDS in which he listed 7 clients whose refunds were obtained from the IRS but U.I. #1 and FIELDS had not sent to them any of the money.  U.I. #1 told FIELDS to "decide what you want to send out."

(13)   June 2, 2011, WINFRED FIELDS caused to be filed with the IRS a 2007, 2008, and a 2009 U.S. Nonresident Alien Income Tax Return forms 1040R in the name of D.D., a citizen of Croatia, each of which falsely claimed D.D. was exempt from U.S. income tax under Article 14 of the UK tax treaty.

(14)   June 8, 2011, WINFRED FIELDS caused to be filed with the IRS a 2007 Amended U.S. Individual Income Tax Return form 1040X in the name of D.D., a citizen of Croatia, which falsely claimed D.D. was exempt from U.S. income tax under Article 14 of the UK tax treaty.

(15)   June 14, 2011, WINFRED FIELDS caused to be filed with the IRS a 2009 U.S. Nonresident Alien Income Tax Return, Form 1040NR, in the name of

V.L., a citizen of Croatia, which falsely claimed V.L. was exempt from U.S. income tax under Article 14 of the UK tax treaty.

(16)   July 28, 2011, WINFRED FIELDS caused to be filed with the IRS a 2010 U.S. Nonresident Alien Income Tax Return, form 1040NR, in the name of M.R.R., a citizen of Brazil, which falsely claimed M.R.R. was exempt from U.S. income tax due Article 14 of a UK tax treaty.

(17)   September 19, 2011, WINFRED FIELDS cashed the 2009 U.S. Treasury tax refund check payable to J.G. in the amount of $19,052.36 and deposited the proceeds into Regions Bank account 6685 held in the name Your Tax Professionals, Inc., without providing any of the refund proceeds to J.G.

(18)   September 19, 2011, WINFRED FIELDS cashed the 2009 U.S. Treasury tax refund check payable to A.S. in the amount of $23,641.62 and deposited the proceeds into Regions Bank account 6685 held in the name Your Tax Professionals, Inc., without providing any of the refund proceeds to A.S.

(19)   October 11, 2011, WINFRED FIELDS caused to be filed with the IRS a 2010 U.S. Nonresident Alien Income Tax Return, Form 1040NR, in the name of V.L., a citizen of Croatia, which falsely claimed V.L. was exempt from U.S. income tax under Article 14 of the UK tax treaty.

(20)   October 21, 2011, WINFRED FIELDS cashed and caused to be cashed at a Houston area check cashing business, the 2010 U.S. Treasury tax refund

check payable to J.G. in the amount of $3,440 and deposited the proceeds into the Your Tax Professionals Inc. Regions Bank account xxx6685 without providing any of the refund money to J.G.

(21)   October 21, 2011, WINFRED FIELDS cashed and caused to be cashed at a Houston area check cashing business, the 2010 U.S. Treasury tax refund check payable to J.R.R. in the amount of $2,281.00 and deposited the proceeds into the Your Tax Professionals Inc. Regions Bank account xxx6685 without providing any of the refund money to J.R.R.

(22)   November 16, 2011, WINFRED FIELDS cashed and caused to be cashed at a Houston area check cashing business, the U.S. Treasury tax refund check payable to G.T. in the amount of $28,165.54 based upon the claimed refund for tax year 2010 and subsequently deposited the proceeds into Your Tax Professionals, Inc. Regions Bank account xxxx6685 without providing any of the proceeds to G.T.

(23)   December 7, 2011, WINFRED FIELDS cashed and caused to be cashed the 2010 U.S. Treasury tax refund check payable to J.I.R. in the amount of $34,779.00 and did not provide any of the refund to J.I.R.

(24)   January 6, 2012, WINFRED FIELDS caused to be filed with the IRS a 2010 U.S. Nonresident Alien Income Tax Return Form 1040NR in the name of M.B.R., a citizen of Brazil, which falsely claimed M.B.R. was exempt from U.S. income tax under Article 14 of the UK tax treaty.

(25)   January 6, 2012, WINFRED FIELDS sent an email responding to inquiries from A.S. about the status of his refunds stating "I am sorry for my tardiness in getting back to you. With the holiday season I was in and out of the office. Plus the IRS was working on short staff and files were just sitting until the agents got back from vacation. I was informed that your 2007 refund was completed and you should have the refund by the 24th of this month.  The 2008 & 2009 claims have been adjusted to reflect the credit and they should be completed processing in 2 weeks and then issued a check date.  I will let you know when I receive it."

(26)   January 10, 2012, WINFRED FIELDS sent and caused to be sent an email to J.I.R. updating him on the status of his tax refund claim stating "[u]nfortunately, the IRS did mail out the refund and it came when my office was closed during the holidays and the postman sent it back to the IRS. The IRS is reprocessing the check but it will take 2-3 weeks to get."

(27)   February 3, 2012, WINFRED FIELDS cashed and caused to be cashed the 2010 U.S. Treasury tax refund check payable to M.A.S. in the amount of $2,864.00 and did not provide any of the refund to M.A.S.

(28)   February 6, 2012, WINFRED FIELDS cashed and caused to be cashed the 2009 U.S. Treasury tax refund check payable to M.A.S. in the amount of $20,952.79 and did not provide any of the refund to M.A.S. after depositing the proceeds into Regions Bank account xxx6685 held in the name Your Tax

Professionals, Inc.

(29)   February 29, 2012, WINFRED FIELDS cashed and caused to be cashed the 2010 U.S. Treasury tax refund check payable to D.N. in the amount of $18,755 and did not provide any of the proceeds to D.N. after depositing the proceeds into Regions Bank account 6685 held in the name of Your Tax Professionals, Inc.

(30)   March 19, 2012, WINFRED FIELDS sent an email to A.S. stating he had received A.S.'s 2007 and 2008 refunds but was still waiting on the 2009 to be completed by the IRS.

(31)   April 13, 2012, WINFRED FIELDS caused the 2009 U.S. Treasury tax refund check payable to J.R.R. in the amount of $15,263.80 to be deposited into an attorney's trust account and caused the attorney to provide FIELDS the proceeds of the refund check minus fees paid to the attorney.

(32)   April 17, 2012, WINFRED FIELDS caused to be deposited into FIELDS' Wells Fargo Bank account xxx3589, the proceeds from the 2009 tax refund check payable to J.R.R.

(33)   May 4, 2012, WINFRED FIELDS sent and caused to be sent an email to G.T. explaining that his 2010 refund check had not been provided by the IRS because G.T.'s "claim happen to be one that was randomly chosen and was sent to a special department where I am not allowed to call."

(34)   May 16, 2012, WINFRED FIELDS caused the 2008 U.S. Treasury tax refund check payable to M.A.S. in the amount of $4,634.08 to be deposited into an attorney's trust account and caused the attorney to provide FIELDS the proceeds of the refund check minus fees paid to the attorney.

(35)   May 17, 2012, WINFRED FIELDS caused the deposit of the proceeds from the 2008 U.S. Treasury tax refund check payable to M.A.S. to be deposited into FIELDS Wells Fargo Bank account xxx3589.

(36)   May 22, 2012, WINFRED FIELDS caused the 2008 U.S. Treasury tax refund check payable to J.R.R. in the amount of $7,445.04 to be deposited into an attorney's trust account and caused the attorney to provide FIELDs the proceeds of the refund check minus fees paid to the attorney.

(37)   May 22, 2012, WINFRED FIELDS caused the 2008 U.S. Treasury tax refund check payable to J.C. in the amount of $9,018.32 to be deposited into an attorney's trust account and caused the attorney to provide to FIELDS the proceeds of the refund check, minus fees paid to the attorney.

(38)   May 24, 2012, WINFRED FIELDS caused to be deposited into the Your Tax Professionals, Inc. bank account xxx6685 at Regions Bank proceeds from the 2008 refund check payable to J.R.R. without paying any of the refund proceeds to J.R.R.

(39)   May 31, 2012, WINFRED FIELDS caused the 2007 U.S. Treasury

tax refund check payable to J.C. in the amount of $2,330.61 to be deposited into an attorney's trust account and caused the attorney to provide to FIELDS the proceeds of the refund check, minus fees paid to the attorney.

(40)   June 12, 2012, WINFRED FIELDS sent and caused to be sent to D.N. an email informing her that he spoke with the IRS and her claim is completed and they are making adjustments which takes 2-3 weeks.

(41)   June 18, 2012, WINFRED FIELDS caused the 2009 U.S. Treasury tax refund check payable to J.C. in the amount of $15,575.56 to be deposited into an attorney's trust account and caused the attorney to provide to FIELDS the proceeds of the refund check, minus fees paid to the attorney.

(42)   September 24, 2012, U.I. #1 sent an email to WINFRED FIELDS attaching information for "the UK Clients we need to deposit checks for."

(43)   September 25, 2012, WINFRED FIELDS caused to be deposited into the trust fund of an attorney, the 2011 U.S. Treasury tax refund check payable to R.J. in the amount of $10,419.00.

(44)   September 25, 2012, WINFRED FIELDS caused to be deposited into the trust fund of an attorney, the 2011 U.S. Treasury tax refund check payable to G.E. in the amount of $31,241.00.

(45)   October 7, 2012, U.I. #1 caused to be sent an email to T.T. explaining that they did go to the bank but the bank's hold on the money was to end

at midnight on Saturday morning but the bank is closed Saturday and on Monday for Columbus Day.

(46)   October 9, 2012, WINFRED FIELDS caused to be deposited into Your Tax Professionals, Inc. Comerica Bank account xxx7776 proceeds from the 2011 tax refund check payable to R.J. without providing any of the refund money to R.J.

(47)   October 9, 2012, WINFRED FIELDS caused to be deposited into Your Tax Professionals, Inc. Comerica Bank account xxx7776 proceeds, from the 2011 tax refund check payable to G.E. without providing any of the refund money to G.E.

(48)   October 10, 2012, U.I. #1 caused to be sent an email to T.T. stating he "went to the bank today but was not able to get wire sent because the bank was having computer problems."

(49)   October 31, 2012, WINFRED FIELDS caused an email to be sent to M.A.S. stating "we have received and deposited your 2008, 2009 and 2010 IRS refund check(s) in the amount of $28,450.87 in which $23,272.07 is due to you. Unfortunately, while waiting on the check(s) to clear we were notified by the bank that our account(s) have been frozen due to the number of international wires that we have been sending out."  The email further stated that due to the "new 911 laws here in the States, the banks do a random quarterly audit on any and all international

wires to verify that the wires aren't being sent to supporters of terrorism."

(50)   November 1, 2012, WINFRED FIELDS sent and caused to be sent an email  to R.J. stating "we have received a direct deposit for your 2011 IRS refund in the amount of $10,419.00 in which $7,710.62 is due to you. Unfortunately, we were notified by the bank that our account(s) have been frozen due to the number of international wires that we have been sending out."  The email further stated "[d]ue to the new 911 laws here in the States, the banks do a random quarterly audit on any and all international wires to verify that the wires aren't being sent to supporters of terrorism."

(51)   November 12, 2012, WINFRED FIELDS caused to be sent an email updating R.J. regarding the situation with FIELDS' frozen bank account into which R.J.'s tax refund has been deposited.

(52)   December 13, 2012, WINFRED FIELDS replied to an email from J.C. about the status of his frozen bank account stating "We are waiting to hear from the attorney today or tomorrow."

(53)   December 27, 2012, WINFRED FIELDS sent and caused to be sent a memo on Fields Enterprises letterhead the subject of which was "US Funds Not Released" in which FIELDS told his clients that the bank was questioning his authority to represent each of them and stated "we must have these agreements to have funds released that are being held at the bank.  We are no longer using this bank

and is now going through our attorney's bank."

(54)   January 4, 2013, WINFRED FIELDS deposited caused to be deposited into his personal bank account xxx3589 at Wells Fargo Bank, a U.S. Treasury income tax refund check for tax year 2009, payable to A.S. in the amount of $23,917.70.

(55)   January 16, 2013, WINFRED FIELDS caused to be sent an email to G.E. stating "[u]nfortunately the request by the bank to have the information notarized was omitted from the first letter sent out. I have attached an updated letter for you to complete."

(56)   February 6, 2013, WINFRED FIELDS deposited and caused to be deposited into his personal account at Wells Fargo Bank, account xxx3589 a U.S. Treasury refund check payable to G.T. in the amount of $10,624.58 for tax year 2011 and did not provide any of the proceeds from that refund to G.T.

(57)   February 14, 2013, WINFRED FIELDS sent and caused to be sent an email to M.A.S. stating "I met with my attorney this weekend and the bank is not making a move. Presently we are developing a plan to the fact that I will now take personal responsibility to make the payments to everyone."

(58)   February 20, 2013, deposited and caused to be deposited into his personal account at Wells Fargo Bank, account xxx3589 a U.S. Treasury refund check payable to D.N. in the amount of $4,605.72 for tax year 2011 and did not

provide any of the proceeds from that refund to D.N.

(59)   May 13, 2013, WINFRED FIELDS sent and caused to be sent an email to G.E. with a letter attached which stated in part "I asked each of you to refrain from calling the IRS and let us work this out but that didn't happen." FIELDS also stated "[m]any of you have attempted to explain to the IRS why you are due a refund and now they are trying to disqualify all refunds."

(60)   July 17, 2013, WINFRED FIELDS caused the ACH deposit of $8,989.92 into the Fields Enterprises Regions Bank account xxx9784 from the IRS for B.D.'s 2012 income tax refund.

(61)   August 8, 2013, WINFRED FIELDS sent and caused to be sent an email to B.D. telling B.D. that FIELDS had spoken with the IRS and "your funds should be in within the next 10 days and I will wire them to you at that time.

(62)   September 16, 2013, WINFRED FIELDS sent and caused to be sent an email in reply to G.E. stating "we are still at a stand still with the bank however, I'm making progress on being able to get some funds personally and get as much to you guys as possible. I should know something within days now."

(63)   September 27, 2013, WINFRED FIELDS sent and caused to be sent a reply email to G.E. stating "I do believe that we are very close to getting something done. However if you want to meet with your attorney than that's your call.  I do feel that we should have some very positive news within the next 10 days or so."

(64)   November 11, 2013, WINFRED FIELDS sent and caused to be sent a response email to J.C. about the status of his refund money stating "I have made good strides; unfortunately I also screwed up some calculations and everything would have been completed by now (I do apologize for that). However, we are looking good on getting everything done within the next 45 to 60 days."

(65)   February 8, 2014, WINFRED FIELDS sent and caused to be sent a reply email to G.T. concerning his U.S. tax refunds stating "there was some paperwork that had to be redone, the bank would not accept the paperwork from the funding source that would give me the funds to get everybody taken care of.  The paperwork was redone and sent back to the bank on Friday and everything should be processed and done next week."

(66)   February 8, 2014, WINFRED FIELDS sent and caused to be sent a reply email to J.I.R. concerning his U.S. tax refund stating "I spoke with the bank on Friday and they told me that everything should be taken care of and ready to go next week. I have been working diligently in trying to get this matter resolved. I will update you on next week."

(67)   February 13, 2014, WINFRED FIELDS sent and caused to be sent a reply email to J.C. concerning the outstanding payment of refund money stating "I have not been able to reach my funding source for the past 2 days being he is in New York where the big snow storm is hitting right now."

(68)   November 19, 2014, WINFRED FIELDS sent and caused to be sent a reply email to M.A.S. stating "[i]f I had the funds you will have them also."

(69)   December 4, 2014, WINFRED FIELDS sent and caused to be sent a reply email to C.H. concerning his refund check telling C.H. that "everything is held up at this point. I do plan to have something for you within the first quarter of 2015."

(70)   December 9, 2014, WINFRED FIELDS sent and caused to be sent a reply email to R.J. concerning the status his refund stating, "[t]he IRS has gotten involved and held everything up even more. They're saying that the refunds shouldn't ever be issued. I'm now fighting that as well as the bank. I'm hoping to get a lot of this taking care of within the next 45 to 60 days."

(71)   November 1, 2015, WINFRED FIELDS and U.I. #1 caused a letter to be prepared addressed to the IRS regarding T.T.'s 2011 tax return.

(72)   January 16, 2016, WINFRED FIELDS sent an email in reply to T.T. regarding an outstanding balance of $40,000 owed to T.T.

All in violation of Title 18, United States Code, Section 1349.

<u>COUNT TWO</u>
(Mail Fraud Title 18, U.S.C. § 1341)

36.   The allegations contained in paragraphs I through III, V, and VI of this Indictment are hereby repeated, realleged, and incorporated by reference as though fully set forth herein.

37.   On or about June 15, 2013, in the Southern District of Texas, the defendant

WINFRED FIELDS

did knowingly devise, and intend to devise, a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme to defraud, and attempting to do so, did knowingly cause to be delivered through the United States Postal Service to the Internal Revenue Service, a U.S. Nonresident Alien Income Tax Return, Form 1040NR, for taxpayer B.D. for the tax year 2012.

In violation of Title 18, United States Code, Section 1341.

COUNTS THREE THROUGH THIRTEEN
(Aiding and Assisting in the Preparation and Presentation
of False Tax Returns – Title 26, U.S.C. §7206(2))

38.   The allegations contained in paragraphs I through III, V, and VI of this Indictment are hereby repeated, realleged, and incorporated by reference as though fully set forth herein.

39.   On or about the dates below, in the Southern District of Texas and elsewhere, the defendant

WINFRED FIELDS

did willfully aid and assist in and procure, counsel, and advise, the preparation and presentation to the Internal Revenue Service of U.S. Nonresident Alien Income Tax

Returns, forms 1040NR, and Amended U.S. Individual Income Tax Returns, forms 1040X, for the taxpayers and tax years listed below, which were false and fraudulent as to material matters in that they represented that the taxpayers were entitled under the provisions of the Internal Revenue laws to claim the following income tax refunds in the amounts listed below, whereas, as the defendant then and there well knew and believed, the taxpayers were not entitled to claim such items in the amounts claimed:

| Count | Taxpayer | Tax Year | Date Filed | Falsely Claimed Item |
|-------|----------|----------|------------|----------------------|
| 3 | T.T. | 2011 | 6/12/2012 | Claimed refund $30,008.00, Form 1040NR |
| 4 | A.S. | 2009 | 6/29/2012 | Claimed refund $23,425.00, Form 1040X |
| 5 | P.C. | 2010 | 7/11/2012 | Claimed refund $1,879.00, Form 1040NR |
| 6 | P.C. | 2011 | 7/11/2012 | Claimed refund $3,208.00, Form 1040NR |
| 7 | D.N. | 2011 | 7/11/2012 | Claimed refund $3,390.00, Form 1040X |
| 8 | M.B. | 2011 | 7/31/2012 | Claimed refund $4,404.00, Form 1040NR |
| 9 | G.T. | 2011 | 7/31/2012 | Claimed refund $10,481, Form 1040X |
| 10 | G.E. | 2011 | 8/8/2012 | Claimed refund $31,241.00, Form 1040NR |
| 11 | R.J. | 2011 | 8/8/2012 | Claimed refund $10,419.00, Form 1040NR |
| 12 | P.C. | 2008 | 10/17/2012 | Claimed refund $11,706.00, Form 1040X |
| 13 | B.D. | 2012 | 6/15/2013 | Claimed refund $9,049.00, Form 1040NR |

In violation of Title 26, United States Code, Section 7206(2).


## COUNT FOURTEEN
(Aiding and Assisting in the Preparation and Presentation
of a False Tax Return – Title 26, U.S.C. §7206(2))

40.     On or about December 16, 2015, in the Southern District of Texas and elsewhere, the defendant

WINFRED FIELDS

did willfully aid and assist in and procure, counsel, and advise, the preparation and presentation to the Internal Revenue Service of an Amended U.S. Individual Income Tax Return, form 1040X, for the tax year 2014 for taxpayer K.Y.W., which was false and fraudulent as to material matters in that it represented that the taxpayer was entitled under the provisions of the Internal Revenue laws to claim an income tax refund of $2,374 when the defendant then and there knew and believed, the taxpayer was not entitled to claim such an income tax refund.

In violation of Title 26, United States Code, Section 7206(2).

## COUNT FIFTEEN
(Aiding and Assisting in the Preparation and Presentation
of a False Tax Return – Title 26, U.S.C. §7206(2))

41.    On or about July 15, 2016, in the Southern District of Texas and elsewhere, the defendant

## WINFRED FIELDS

did willfully aid and assist in and procure, counsel, and advise, the preparation and presentation to the Internal Revenue Service of an Amended U.S. Individual Income Tax Return, form 1040X, for the tax year 2014 for taxpayer K.Y.W., which was false and fraudulent as to material matters in that it represented that the taxpayer was entitled under the provisions of the Internal Revenue laws to claim an exception to reporting cancellation of indebtedness income from USAA Federal Savings Bank in the amount of $102,213 and to claim an income tax refund of $2,374 when the

defendant then and there well knew and believed, the taxpayer was not entitled to claim such a refund and was not entitled to claim an exception to reporting cancellation of indebtedness income.

In violation of Title 26, United States Code, Section 7206(2).

## NOTICE OF CRIMINAL FORFEITURE
### (Title 18, U.S.C. §981(a)(1)(C); Title 28 U.S.C. §2461(c))

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the Defendant,

### WINFRED FIELDS

that in the event of conviction of mail fraud in violation of Title 18, United States Code, Section 1341 or conspiracy to commit mail or wire fraud in violation of Title 18, United States Code, Section 1349, all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses is subject to forfeiture.

The property subject to forfeiture is approximately $3,097,000. The United States will seek a money judgment against the defendant in the amount of the property the defendant obtained or acquired as a result of the criminal offenses. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendant up

to the amount of the money judgment.

A TRUE BILL:

ORIGINAL SIGNATURE ON FILE
FOREPERSON OF THE GRAND JURY


RYAN K. PATRICK
UNITED STATES ATTORNEY

By:

Melissa J. Annis
Assistant United States Attorney


Charles Escher
Assistant United States Attorney